## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**KEY CONSTRUCTION, INC.,**

        **Plaintiff,**

v.

**WESTERN SURETY COMPANY,**

        **Defendant.**

**Case No. 22-1247-DDC-ADM**

### <u>MEMORANDUM AND ORDER</u>

This matter comes before the court on two motions:  (1) plaintiff Key Construction, Inc.'s Motion to Remand (Doc. 11) and (2) defendant Western Surety Company's Motion to Change Venue (Doc. 10).  For reasons explained below, the court denies both motions.

**I.     Factual and Procedural Background**

Plaintiff alleges the relevant facts as follows.  Plaintiff is a general contractor who contracted with Tukwila Hotel Group, LLC for the construction of a hotel in Tukwila, Washington.  Doc. 1-1 at 6 (Pet. ¶ 5).  Plaintiff then subcontracted with Total Fire Protection, Inc. (TFP).  *Id.* (Pet. ¶ 6).  TFP and defendant executed and delivered to plaintiff a performance bond and payment.  Doc. 11 at 2.  TFP defaulted on the Subcontract by failing to follow local building codes which prompted the Tukwila Fire Marshal to issue a stop work order.  Doc. 1-1 at 7 (Pet. ¶ 8).  TFP then ignored the stop work order, which caused the Tukwila Fire Mashal to shut down the entire project and delay construction by 87 days.  *Id.* (Pet. ¶¶ 10–12).  TFP's default caused plaintiff to sustain a loss of $447,879.69, and defendant refuses to indemnify plaintiff for those losses.  *Id.* at 8–9 (Pet. ¶¶ 24–25).

Plaintiff filed suit in the District Court of Sedgwick County, Kansas.  Doc. 1-1 at 5–10. The lawsuit seeks recovery on both the payment bond and performance bond.  *Id.*  Defendant removed the case to this court.  Doc. 1.  Defendant then moved to change venue.  Doc. 10. Plaintiff then moved to remand the case to Sedgwick County District Court.  Doc. 11.

These matters are fully briefed.  For reasons explained below, the court denies plaintiff's Motion to Remand and denies defendant's Motion to Change Venue.

## II.     Motion to Remand

The court first addresses plaintiff's Motion to Remand.

### A.     Legal Standard

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction."  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted).  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").  Even where a federal court has subject matter jurisdiction, "a valid forum selection clause may prohibit a federal court from exercising jurisdiction if the parties contractually agreed to litigate the matter elsewhere."  *K.R.W. Constr., Inc. v. Stronghold Eng'g Inc.*, 598 F. Supp. 3d 1129, 1135–36 (D. Kan. 2022).

### B.     Analysis

The court previously has expressed that it "is satisfied that defendant has sufficiently alleged facts that the parties are completely diverse for subject matter jurisdiction purposes under 28 U.S.C. § 1332."  Doc 8.  Having resolved that the court possesses subject matter jurisdiction,

the court next considers whether a valid forum-selection clause nonetheless prohibits it from exercising jurisdiction.  As explained below, the court concludes that no such prohibition against jurisdiction exists and that the forum-selection clause contained in the Subcontract does not bind defendant.

Plaintiff argues that defendant is bound by a forum-selection clause contained in the Subcontract, which was incorporated in both bonds.  Doc. 11 at 4–6.  That forum-selection clause dictates that the parties must litigate "any dispute between Contractor and Subcontractor" in the District Court of Sedgwick County, Kansas.  Doc. 11-2 at 15.  Defendant argues that the forum-selection clause applies only to disputes arising between plaintiff and TFP, and so, does not bind defendant.  Doc. 14 at 4–5.

No doubt, both the payment bond and the performance bond incorporate the Subcontract. Both bonds include language that the "Subcontract is hereby referred to and made a part hereof." Doc. 11-3 at 1, 3.  The language of this provision plainly and unambiguously incorporates the Subcontract into the performance and payment bonds despite defendant's contention that the bonds do not use "the word 'incorporate.'"  Doc. 14 at 2.  Indeed, many courts have found similar or identical contract language incorporates a subcontract into the contract.  *E.g.*, *Exch. Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 276 (6th Cir. 1984) (language of "which Subcontract is hereby referred to and made a part hereof" incorporates subcontract); *Great Am. Ins. Co. v. Hinkle Contracting Corp.*, 497 F. App'x 348, 349 (4th Cir. 2012) (language of "subcontract is by reference made a part hereof" incorporates subcontract); *Com. Union Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386, 388 (5th Cir. 1993) (same).

Because the bonds incorporated the Subcontract, the court next must interpret and determine the effect of the forum-selection clause in the Subcontract.  "Decisions from the

District of Kansas have determined that 'the effect to be given a contractual forum-selection clause in diversity cases is determined by federal not state law.'" *K.R.W. Constr., Inc. v. Stronghold Eng'g, Inc.*, 598 F. Supp. 3d 1129, 1135 (D. Kan. 2022) (quoting *Bowen Eng'g, Corp. v. Pac. Indem. Co.*, 83 F. Supp. 3d 1185, 1190 (D. Kan. 2015)); *Herr Indus., Inc. v. CTI Sys., SA*, 112 F. Supp. 3d 1174, 1178 (D. Kan. 2015) ("The overwhelming majority of circuit courts consider the enforceability of forum selection clauses under federal law in diversity cases, based on the conclusion that venue presents a question of procedure for purposes of the *Erie* doctrine.").

At issue is the forum-selection clause contained in the Subcontract which reads, in pertinent part:

> To the extent Contractor does not elect arbitration, and to the fullest extent permitted by law, the parties agree and stipulate that the Eighteenth Judicial District, District Court, Sedgwick County, Kansas is the court of exclusive jurisdiction and venue to determine any dispute between Contractor and Subcontractor arising out of or relating to this Subcontract.

Doc. 11-2 at 15.

"A forum-selection clause is presumptively valid" unless its enforcement would violate a deeply held public policy of the forum where the suit is filed. *K.R.W. Constr. Inc.*, 598 F. Supp. 3d at 1136. Here, the Subcontract contains a valid and enforceable forum-selection clause. The dispositive question, however, is not whether the forum-selection clause is enforceable but, instead, whether it binds defendant, a nonparty to the Subcontract. Courts "look to standard principles of contract interpretation to determine the rights and obligations of a surety under a bond." *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 51 (2d Cir. 2004). This necessitates that "[t]he intent of the parties to a surety bond should be ascertained by a fair and reasonable construction of the written words, and any language used should be given its common

and ordinary meaning." *Devs. Sur. & Indem. Co. v. Carothers Constr., Inc.*, 320 F. Supp. 3d 386, 392 (D. Conn. 2018) (quoting *Stonington Water St. Assoc., LLC v. Hodess Bldg. Co.*, 792 F. Supp. 2d 253, 262 (D. Conn. 2011)).  The plain language of the forum-selection clause contained in the Subcontract expressly limits its terms to "any dispute *between Contractor and Subcontractor*."  Doc. 11-2 at 15 (emphasis added).  The same document defines "Contractor" as Key Construction, Inc. (plaintiff) and "Subcontractor" as Total Fire Protection, Inc.  Doc. 11-2 at 1.  As such, the forum-selection clause is unambiguous and does not bind defendant because, by its own terms, the forum-selection applies *only* to disputes between plaintiff and TFP.

As defendant notes, *see* Doc. 14 at 4–5, a somewhat analogous situation arose in *Developers Surety and Indemnity Co. v. Carothers Constuction, Inc.*, No. 17-2292-JWL, 2017 WL 3674975 (D. Kan. Aug. 24, 2017).  There, the bonds incorporated a subcontract that included an arbitration clause.  It dictated that controversies "between the Contractor [] and the Subcontractor [] arising out of or relating to this Subcontract shall be decided by binding arbitration[.]"  *Id.* at *3.  Judge Lungstrum explained:

> Even assuming that [the indemnity company] agreed to the incorporation into the bonds of the subcontract's arbitration provision, that provision applies explicitly and clearly only to disputes "between the Contractor and the Subcontractor" . . . . Thus, by its terms, the arbitration provision does not apply to [Contractor's] claims on the bonds, which is a dispute between [Contractor] and [the indemnity company].

*Id.* at *4.  A similar action from the District of Connecticut resolved this dispute in much the same way as our court decided the issue.  *Carothers*, 320 F. Supp. 3d 386.  There, the incorporated subcontract contained identical language to the subcontract at issue in *Developers Surety*.  *Id.* at 391.  And as Judge Lungstrum held in the Kansas case, the Connecticut federal court concluded that "[t]he plain language of the Subcontract" did not bind the surety company.  *Id.* at 392.  The court reasoned that the parties could have omitted the language limiting the

arbitration provision to the parties if they had intended for it to apply to *any* claim arising from the subcontract. *Id.* at 392–93.

Plaintiff asserts three arguments trying to avoid the conclusion that the subcontract forum-selection clause does not bind defendant here. *First*, plaintiff argues that the *Carothers* and *Developers Surety* cases are inapposite on these facts. Doc. 15 at 2–3. In those cases, discussed above, the courts referenced other parts of the subcontracts in question to support their conclusions that the subcontract's references to "the Subcontractor" were not also references to the surety. *Carothers*, 320 F. Supp. 3d at 392; *Developers Surety*, 2017 WL 3674975, at *4, *4 n.4. Here, the Subcontract contains no analogous references to bolster such a conclusion. Still, it is inescapable. A plain reading of the Subcontract's forum-selection clause restricts its application to disputes arising between "between Contractor and Subcontractor," and the Subcontract explicitly defines the "Subcontractor" as TFP. Doc. 11-2 at 1, 10.

*Second*, plaintiff argues that the obligations of a surety are coextensive with those of the principal and this rule requires that the forum-selection clause bind defendant because the principal, TFP, was bound by it. Doc. 15 at 1–2. Judge Lungstrum considered and rejected this same argument in *Developers Surety*. 2017 WL 3674975, at *6. He noted:

> Even though a surety's liability may be coextensive with that of the principal as a general rule, [the indemnity company's] liability in this case is defined by the terms of the bonds, and although the bonds incorporate the terms of the subcontract, [the indemnity company] did not assume any or all obligations of [the subcontractor] under that subcontract.

*Id.* The same logic applies equally here. That is, the bonds themselves define the contractual relationship between the parties, and the bonds don't specify that defendant assumes all obligations undertaken by TFP in the Subcontract. *See* Restatement (First) of Security § 82 cmt. g (Am. L. Inst. 1941) ("Suretyship obligations are contractual, and the important point of inquiry

should be the *precise undertaking* of the surety and the duty of the principal." (emphasis added)). Indeed, the question is the "obligation assumed in a particular case" rather than "the distribution of labels to the various types of contracts." *Id.* Also, plaintiff has not identified any Washington[1] case holding that a surety necessarily assumes all obligations of the principal.

*Third*, plaintiff contends that since a non-signatory may invoke a forum-selection clause under certain circumstances, *see K.R.W. Constr. Inc.*, 598 F. Supp. 3d at 1140, the inverse—that a signatory may invoke the forum-selection clause against a non-signatory—also is true. *See* Doc. 15 at 3–4. This argument is unavailing for a couple of reasons. First, this principle applies only when "'the nonparty's enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound.'" *K.R.W. Constr. Inc.*, 598 F. Supp. 3d at 1140 (quoting *Bowen Eng'g*, 83 F. Supp. 3d at 1189–90). Here, invoking the forum-selection clause against defendant is not reasonably foreseeable given its explicit restriction to disputes arising between the Subcontractor and Contractor. Second, *K.R.W. Construction*'s holding differs from the facts here because, there, the non-signatory invoked the forum selection clause against the signatory to the contract who necessarily had agreed to the forum-selection clause (albeit in relation to a different party). *See id.*; *see also Carothers*, 320 F. Supp. 3d. at 394 ("But that case in fact involved a non-signatory's attempt to compel arbitration against a *signatory* to the arbitration agreement, and an arbitration agreement that concededly covered and bound the signatory—which is essentially the inverse of the facts here." (footnote and citation omitted)).

---

[1] The Subcontract contains a choice-of-law provision stating: "Contractor and Subcontractor further agree that this Subcontract shall be construed, interpreted, and governed in accordance with the laws of the State of Washington." Doc. 11-2 at 15.

In short, the forum-selection clause in the Subcontract does exactly what it says:  It restricts litigation between the Subcontractor and Contractor to the specified forum.  By its very terms, it applies only to disputes between plaintiff and TFP.  The forum-selection clause does not apply to defendant.  Accordingly, the court denies plaintiff's Motion to Remand.

## III.     Motion to Change Venue

The court now turns to defendant's Motion to Change Venue.  It asks the court to transfer the case to the United States District Court for the Western District of Washington.  Doc. 10 at 1.

### A.     Legal Standard

Title 28 U.S.C. § 1404 governs change of venue.  The statute provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]"  28 U.S.C. § 1404(a).  A defendant who has removed an action from state court "can seek a transfer under § 1404(a)" if "the case can be better litigated and tried in another division or district."  *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1300–01 (11th Cir. 2001).  "An action may be transferred under § 1404(a) at any time during the pendency of the case, even after judgment has been entered."  *Schroeder v. Wichita Police Dep't*, No. 20-1216-DDC-GEB, 2020 WL 5573111, at *1 (D. Kan. Sept. 17, 2020) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)).

The district court has broad discretion under § 1404(a) to adjudicate motions to transfer based on a case-by-case review of convenience and fairness.  *Chrysler Credit Corp.*, 928 F.2d at 1516.  The Tenth Circuit has instructed district courts to consider the following factors when determining whether to transfer a case:

> plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses;

the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.* (quoting *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)); *see also Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010).  The party moving to transfer a case bears the burden to show that transfer is appropriate under § 1404(a).  *Bartile Roofs, Inc.*, 618 F.3d at 1167.  In addition, the movant must "demonstrate that the balance of factors 'strongly favors' a transfer of venue under § 1404(a)."  *Id.* at 1167 n.13.

### B.    Analysis

The statute governing a motion to transfer requires that (1) the transferee court is one where plaintiff could have filed suit originally, and (2) the convenience of the parties and witnesses and the interest of justice favor transfer.  *See* 28 U.S.C. § 1404(a).  The court concludes that although the first prong is satisfied, the second prong is not.

### 1.    Suit could have been filed in transferee court

First, the putative transferee court—the Western District of Washington—is one where plaintiff could have filed suit originally.  A transferee district qualifies under 28 U.S.C. § 1404(a) as one "where [the action] might have been brought" if, when the suit commenced, "plaintiff ha[d] a right to sue in that district, independently of the wishes of defendant[.]"  *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (quotation marks and citation omitted).  "The 'where it might have been brought' language . . . . incorporates the requirements of jurisdiction and proper venue."  *Mid Kan. Fed. Sav. & Loan Ass'n of Wichita By & Through Resol. Tr. Corp. v. Orpheum Theater Co.*, 810 F. Supp. 1184, 1188–89 (D. Kan. 1992) (citing *Hoffman*, 363 U.S. at 342–44).  Thus, "§ 1404(a) does not allow a court to transfer a suit to a district which lacks

personal jurisdiction over the defendants, even if they consent to suit there." *Chrysler Credit Corp.*, 928 F.2d at 1515.

Here, the transferee district satisfies both venue and personal jurisdiction requirements. "In a diversity action, venue lies in (1) a judicial district where any defendant resides, . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." *Bartile Roofs, Inc*., 618 F.3d at 1165 (quoting 28 U.S.C. § 1391(b)(1)–(3)).  Because defendant is neither headquartered nor incorporated in Washington, *see* Doc. 1–1 at 6 (Pet. ¶2), venue is plausible in one of the federal judicial districts there only under 28 U.S.C. § 1391(b)(2). "Under that provision, venue is not limited to the district with the *most* substantial events or omissions." *Bartile Roofs, Inc.*, 618 F.3d at 1165.  Rather, § 1391(b)(2) "'permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts.'" *Id.* at 1166 (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)).

The court conducts a two-step analysis to determine if venue is proper under § 1391(b)(2). *Id.*  First, the court "examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those claims." *Id.*  Here, plaintiff seeks recovery on payment and performance bonds from defendant related to a construction project in Tukwila, Washington. Second, the court "determine[s] whether substantial 'events material to those claims occurred' in the forum district." *Id.* (quoting *Gulf Ins. Co.*, 417 F.3d at 357).  The substantial events material to this action's claims occurred in the Western District of Washington where the principal to the payment and performance bonds allegedly defaulted on the Subcontract. *See id.* at 1167 ("Courts have held that the alleged damages or loss under an insurance policy may constitute a

substantial event for purposes of the venue analysis."). So, the court concludes that venue in the Western District of Washington is proper under 28 U.S.C. § 1391(b)(2).

For much the same reasons, the Western District of Washington also has personal jurisdiction over defendant. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (instructing that specific jurisdiction is satisfied when the action "aris[es] out of or relate[s] to the defendant's contacts with the forum" (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). The transferee court is thus one where the plaintiff could have originally filed suit.

### 2.   Balance of factors does not favor transfer

Having determined that plaintiff originally could have sued in the Western District of Washington, the court now weighs the factors outlined above to determine if they strongly favor transfer of venue. They do not.

### a.   Plaintiff's Choice of Forum

This factor slightly weighs against transfer. As our Circuit has explained, "[u]nless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should rarely be disturbed." *Bartile Roofs, Inc.*, 618 F.3d at 1167 (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)); *see also Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993) ("A plaintiff's choice of forum is entitled to substantial weight."). This factor is afforded less weight if "the plaintiff does not reside in the district." *Bartile Roofs, Inc.*, 618 F.3d at 1167. Additionally, courts "accord little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection the plaintiff's chosen forum.'" *Id.* (quoting *Cook*, 816 F. Supp. at 669).

The plaintiff's choice of forum weighs against transfer, but the weight afforded to this factor is minimal. Although plaintiff resides in Kansas, *see* Doc. 7 at 1, none of the events giving rise to this action took place in Kansas. Several courts "have found that the location of the alleged damage or loss is 'significant' for the purposes of analyzing the convenience of a particular venue." *Bartile Roofs, Inc.*, 618 F.3d at 1168 (first citing *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001); then citing *Gulf Ins. Co.*, 417 F.3d at 358)). The court gives reduced deference to this factor because the events giving rise to this action did not occur in Kansas.

### b. Accessibility of Witnesses and Sources of Proof

The accessibility of witnesses and sources of proof neither weighs in favor nor against transfer. Generally, "'[t]he convenience of witnesses is the most important factor in deciding a motion under § 1404(a).'" *Bartile Roofs, Inc.*, 618 F.3d at1169 (quoting *Cook*, 816 F. Supp. at 669). As the Tenth Circuit has explained,

> To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) 'indicate the quality or materiality of the[ir] testimony'; and (3) 'show[ ] that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary.'

*Id.* (quoting *Scheidt*, 956 F.2d at 966). Here, defendant alleges that key witnesses, including the Tukwila Fire Marshal and other sources of proof, are located in the Western District of Washington. *See* Doc. 10 at 4. However, defendant identifies no other witnesses or their locations. More importantly, defendant has not explained the materiality of the Tukwila Fire Marshal's testimony or of any sources of proof located in Washington. *See* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3851, Westlaw (4th ed. updated Apr. 2022) ("If the moving party merely has made a general allegation

that necessary witnesses are located in the transferee forum, without identifying them and

providing sufficient information to permit the district court to determine what and how important

their testimony will be, the motion to transfer should be denied.").  Nor has defendant

demonstrated that any witnesses are "unwilling to come to trial" or that deposition would prove

unsatisfactory.  *See Bartile Roofs, Inc.*, 618 F.3d at 1169.  In short, defendant has failed to satisfy

its burden that transfer of venue is necessary for accessibility of witnesses and sources of proof.

On balance, this factor is neutral.

### c.  Cost of Making Necessary Proof

This factor likewise is neutral.  Defendant alleges that litigation in Washington would be

more "cost-effective."  Doc. 10 at 4.  But defendant never justifies or supports its conclusory

statement with any specifics.  *Id.* at 3–4.  As such, this factor is neutral "because the record

contains no evidence concerning the potential costs of litigating" in Kansas.  *Bartile Roofs, Inc.*,

618 F.3d at 1169.

### d.  Difficulties that May Arise from Congested Dockets

The congestion factor weighs against transfer.  "When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."  *Bartile Roofs, Inc.*, 618 F.3d at 1169.  Here, based on the most recently available data, the District of Kansas is substantially less congested on these statistics except for median time from filing to disposition, which is relatively close.[2]  Therefore, this factor weighs against transfer.

### e.  Conflict of Laws

This factor slightly weighs in favor of transfer.  "In a diversity action, courts prefer the action to be adjudicated by a court sitting in the state that provides the governing substantive law."  *Bartile Roofs, Inc.*, 618 F.3d at 1169.  But here, this factor deserves less weight for two reasons.  First, the underlying legal issues are "'relative[ly] simpl[e].'"  *Id.* (quoting *Scheidt*, 956 F.2d at 966).  And second, "federal judges are qualified to apply state law."  *Id.*  In addition, although Washington provides the substantive governing law, *see supra* note 1, it is not apparent that Washington's substantive law differs from Kansas's substantive law in any material way for this action.  As such, this factor is entitled to little weight.

---

[2]        This chart summarizes the most recently available pertinent data for the two districts:

|                                               | D. Kan. | W.D. Wash. |
|-----------------------------------------------|---------|------------|
| Median Time from Filing to Disposition (Civil)* | 8.3     | 7.9        |
| Median Time from Filing to Trial (Civil)*      | 26.0    | 35.3       |
| Pending Cases Per Judge                        | 265     | 418        |
| Average Weighted Filing Per Judge              | 275     | 401        |

*Expressed in months.  *See* United States Courts, *Federal Court Management Statistics, June 2022* (last updated June 30, 2022), https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2022.

### f.   Advantage of Having Local Court Determine Questions of Local Law

This factor favors transfer.  "When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale."  *Bartile Roofs, Inc.*, 618 F.3d at 1170.  The events giving rise to this action largely occurred in Washington.  Thus, "'[t]here is a local interest in having localized controversies decided at home,'" and this factor weighs in favor of transfer.  *See Bailey v. Union Pac. R.R. Co.*, 364 F. Supp. 2d 1227, 1233 (D. Colo. 2005) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)).

### g.   Remaining Factors

The remaining factors are neutral.  Defendant "has not identified any obstacles to a fair trial" in Kansas.  *Bartile Roofs, Inc.* 618 F.3d at 1170.  Nor has defendant argued that it could not enforce a judgment acquired from the District of Kansas.  *See id.*  And other than cursory allegations that witnesses and proof are located in Washington, defendant has not shown that litigation in Washington would prove "more easy, expeditious, or economical" than litigation in Kansas.  *Id.*

In total, as they apply here, the factors produce a relatively close call.  Plaintiff's choice of forum and court congestion weigh against transfer while conflict of laws and allowing a local court to decide localized issues slightly favor transfer.  But the governing legal standard requires defendant to demonstrate that the factors "strongly favor" transfer of venue.  *See id.* at 1167 n.13. Defendant hasn't sustained that burden.  The court thus denies defendant's Motion for Change of Venue.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Key Construction, Inc.'s Motion to Remand (Doc. 11) is denied.

**IT IS FURTHER ORDERED THAT** defendant Western Surety Company's Motion for Change of Venue (Doc. 10) is denied.

**IT IS SO ORDERED.**

**Dated this 23rd day of February, 2023, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**